IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


ALEXANDER LARKINS,
        Petitioner,

vs.                                Case No. 4:06cv111/RH/EMT

WALTER A. McNEIL,[1]
        Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 9). Respondent filed an answer and relevant portions of the state court record (Doc. 32). Petitioner filed a reply (Doc. 35).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.        BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (Doc. 32). Petitioner was charged by information in the Circuit Court for Leon County, Florida, with one count of kidnapping to inflict bodily harm or to terrorize, one count of aggravated battery (great bodily harm), and one count of aggravated assault with a deadly weapon

_____

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

for offenses that occurred between August 6–18, 2001 (*id.*, Ex. BB at 24). Petitioner proceeded to trial and was found guilty as charged on all counts (*id.* at 68–71, Exs. CC, DD, FF). On October 21, 2002, Petitioner was adjudicated guilty and sentenced as a prison releasee reoffender to life imprisonment on the kidnapping count and concurrent terms of fifteen (15) years and five (5) years of incarceration on the aggravated battery and aggravated assault counts, respectively, to run concurrently with the life sentence, and with pre-sentence jail credit of 425 days (Doc. 32, Ex. BB at 72–83, Ex. EE).

Petitioner appealed the judgment of conviction and sentence to the Florida First District Court of Appeal (First DCA). On January 30, 2004, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion (Doc. 32, Ex. II). Larkins v. State, 865 So. 2d 485 (Fla. 1st DCA Jan. 30, 2004) (Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On June 1, 2004, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 32, Ex. LL). The trial court denied Petitioner's motion in a written opinion rendered on August 5, 2004 (*id.* at 17–91). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam on February 21, 2005, with the mandate issuing April 18, 2005 (Doc. 32, Exs. OO, PP). Larkins v. State, 896 So. 2d 750 (Fla. 1st DCA Feb. 21, 2005) (Table).

Petitioner filed the instant habeas action on February 28, 2006 (Doc. 1 at 6). The court already determined that the petition is timely (*see* Doc. 29).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>    (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the

---

[2]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or

unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, --- L. Ed. 2d --- (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the
applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* With regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"<u>McNair [v. Campbell]</u>, 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. <u>Bailey</u>, 172 F.3d at 1303. In the second instance, a federal court

---

[5]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

---

[6]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

    A.    Ground one: Ineffective Assistance of Trial Counsel for Failure to Call a Psychiatrist Expert Witness.

Petitioner claims that his trial counsel rendered ineffective assistance by failing to call a psychiatric expert witness who could have testified that the victim suffered from mental health problems (Doc. 9 at 4).  Petitioner states the victim had been a patient at two mental health institutions, suffered from bipolar disorder, and took several medications, including Prozac, Xanax, Neurontin, and Levoxy (*id.*).  Petitioner states the expert witness could have testified that the side effects of the victim's medications and mental condition included confusion and hallucinations (*id.*).

Respondent concedes that Petitioner exhausted this claim by presenting it to the state courts in his Rule 3.850 motion (Doc. 32 at 7, 12)

    1.    Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.1984) (citations omitted); Crawford v. Head, 311 F.3d 1288, 1312 (11th Cir. 2002) ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client. In this regard, this court will not substitute its judgment for that of trial counsel.") (quotation marks, internal alteration, and citation omitted). There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy. Rogers, 13 F.3d at 386; see also Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also

constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

"In general, defense counsel renders ineffective assistance when [he] fails to investigate adequately the sole strategy for a defense or to prepare evidence to support that defense." Fortenberry v. Haley, 297 F.3d 1213, 1226 (11th Cir. 2002). Counsel's duty to investigate "requires that counsel 'conduct a substantial investigation into any of his client's plausible lines of defense.'" *Id.* (citation omitted).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)). "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[7]

### 2. Federal Review of State Court Decision

In the state court's written opinion denying Petitioner's Rule 3.850 motion, the state court identified Strickland as setting forth the controlling legal standard for analyzing claims of ineffective assistance of counsel (Doc. 32, Ex. LL at 18). The state court found as fact that the victim's trial testimony during direct examination by the prosecutor gave no indication that any of the drugs or medication she ingested during the events she described affected her ability to perceive and understand those events (*id.*). The court further found that defense counsel challenged the victim's credibility during cross-examination by questioning her about her mental health history and use of drugs and medication, and defense counsel argued during closing statements that the victim was not credible because of her mental history and use of drugs and medication (*id.*). The court noted that defense counsel would have waived the right to present first and last closing arguments, known as

---

[7]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

"the sandwich,"[8] if he had called a witness to testify, and counsel presented "ample" information concerning the victim's drug and medicine use without waiving "the sandwich" (*id.*).  The state court concluded that Petitioner failed to establish that counsel's failure to call an expert witness reasonably affected the outcome of trial (*id.*).

Because the state court correctly identified <u>Strickland</u> as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of <u>Strickland</u>.

Petitioner has not proffered any evidence to rebut the state court's factual findings, and a review of the state court record confirms that they are correct.  During direct examination, Kimberly Tindall, the victim, testified that she became acquainted with Petitioner when she began buying drugs from him in May of 2001 (Doc. 32, Ex. CC at 36–37).  She admitted that she had been smoking crack cocaine for seven years and was smoking it in August of 2001 (*id.* at 37–38, 41).  She testified that on August 6, 2001, Petitioner drove her to his brother's house at 814 Dunn Street and beat her with his hands and fists, stomped on her stomach, and threw her through doors (*id.* at 38–40).  She testified that six or seven people were present in the house at the time, including Petitioner's brother, but none of them intervened because they were high on crack cocaine supplied by Petitioner, and they did not want to get involved in Petitioner's personal business (*id.* at 40).  She testified that Petitioner started the abuse by hitting her in the head, then threw her on the bed, threw her on the floor, stomped on her stomach, kicked her between the legs, and never stopped hitting her in the head (*id.* at 40–41).  She admitted that she had been smoking crack cocaine on that day (*id.* at 41).  The prosecutor questioned Ms. Tindall about the effects of crack cocaine on her memory and her ability to understand things that occurred around her:

---

[8]A "sandwich" closing argument refers to Florida Rule of Criminal Procedure 3.250, which states:  "a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury."  *See* <u>Van Poyck v. State</u>, 694 So. 2d 686, 697 (Fla. 1997) (defense counsel clearly had tactical reasons for limiting his presentation of evidence, it was "important to save the sandwich," i.e., "for the defense to argue first and last if there's no evidence offered aside from the testimony of the defendant").  Although changes in Florida statutes and criminal procedural rules eliminated "the sandwich" in 2007, when Petitioner was prosecuted in 2002 the defense was permitted to have both the opening and rebuttal closing arguments if it presented no evidence other than the defendant's testimony.  *See* <u>Evans v. State</u>, Nos. SC05-1617, SC07-494, 2008 WL 3926721, at *7 n.16 (Fla. Aug. 28, 2008).

> Q.      Describe to the jury if you can what affect [sic] that [crack cocaine] has on your ability to remember things or to understand what is going on around you at the time?  Are you able to tell the jury that?
>
> A.      I know exactly what happens to me and what happened to me at that time even if I had been under the influence or hadn't been.  You don't forget the injuries and the pain that you suffered.
>
> Q.      Is there any question in your mind whether or not the crack that you took that day has affected your memory as to who inflicted those injuries on you?
>
> A.      No, ma'am, not at all.

 (*id.* at 41–42).  Ms. Tindall then identified Petitioner as the person who injured her on August 6, 2001 (*id.*).  Ms. Tindall testified that she could not even attempt to leave the house because Petitioner would not let her out of the bedroom; he forcefully held her down, threatened to kill her, and laid down beside her so she could not go anywhere; and, the house was locked from the inside with a key  that Petitioner kept in his pocket (*id.* at 44–46).

Following a recess, Ms. Tindall testified to an additional incident that occurred on August 14, 2001.  She testified that she had been sleeping for three or four hours and awoke at 5:00 a.m. (*id.* at 49).  She did not recall that she had been smoking crack cocaine prior to falling asleep, and she was aware of her surroundings when she awoke (*id.*).  Ms. Tindall testified that she telephoned Petitioner to tell him that she needed her car that he had borrowed, and Petitioner angrily responded that he would be there soon (*id.* at 49–50).  When he arrived, he yelled for her and then began hitting her with a telephone that he had pulled out of the wall (*id.* at 50–51, 56).  She testified that he threw her onto the couch and she hit her head on the wall, causing a hole in the Sheetrock (*id.* at 50–52).  Ms. Tindall testified that Petitioner dragged her into her car and sat in the backseat with her while another man drove her car (*id.* at 54–56).  She testified that Petitioner told her they were going back to the house on Dunn Street, and she testified she was terrified that she was going to be killed (*id.* at 55).  She testified that Petitioner beat her during the drive from her house to his house, and at one point he choked her until she was momentarily unconscious (*id.* at 56–57).  She stated that she was not under the influence of crack cocaine at that time (*id.* at 57).

Ms. Tindall testified that when they arrived at the house on Dunn Street, Petitioner pulled her into the house, still hitting her, and threw her onto the couch (*id.* at 57–58).  She testified that

six or seven people were smoking crack in the house, but no one intervened to help her until Petitioner went to the kitchen and picked up a butcher knife (*id.*).  Petitioner threatened her with the knife, and then Petitioner's cousin Stanley called him into the bedroom and convinced him to put the knife down (*id.* at 58–59).  Petitioner came back into the livingroom and resumed hitting Ms. Tindall (*id.* at 59).  The other people left the house, and Petitioner locked the door behind them (*id.* at 60).  Ms. Tindall testified that Petitioner told her to lie on the bed, and he laid down with her (*id.* at 61).  She testified that she was not under the influence of anything at the time (*id.* at 61–62).  She testified that 30–45 minutes later, she convinced Petitioner to drive her home (*id.* at 62).  When they arrived at her home, Petitioner passed out on the couch, and she got her car keys and "ran for my life" (*id.* at 63).  She testified that she drove to her grandmother's house, and her eyes were so swollen from the beatings that she had to hold her left eye open to see the road (*id.* at 63–64).  Ms. Tindall testified that she returned home three days later, and her aunt picked her up and took her to her own house and called law enforcement (*id.* at 65–67, 70).

Ms. Tindall identified photographs of her injuries (*id.* at 71–73).  She also identified letters written to her by Petitioner after he was arrested on the charges stemming from the beatings on August 6 and 14, in which Petitioner apologized for hurting her and stated, "I see that not continuing my Christian walk has almost cost mine & your life" (*id.* at 74–78; Ex. FF).

On cross-examination, Ms. Tindall admitted that during the period August 6–14 she was taking Prozac, Xanax, Neurontin, and Levoxyl for treatment of bipolar disorder (*id.* at 79, 82).  She also admitted that she was smoking crack cocaine during that time period (*id.* at 82–83).  She testified that the letters she received from Petitioner were in response to letters she had written him because she believed she loved him (*id.* at 84, 86).

Petitioner has failed to show a reasonable probability that the result of trial would have been different if counsel had presented expert testimony from a psychiatrist.  Initially, the jury heard from Ms. Tindall's own testimony that she was a crack addict for several years, that she was smoking crack in August of 2001, and specifically on August 6 when one of the beatings occurred, and that she was suffering from a mental disorder and taking four medications for the disorder at the time of the beatings.  Defense counsel used this evidence in closing argument to discredit Ms. Tindall.  Counsel argued that Ms. Tindall was not a credible witness because she was a seven-year crack

addict, she saw a psychiatrist once a month, and she took four prescription medications while she was smoking crack (Doc. 32, Ex. DD at 22–23, 25).  Additionally, Petitioner's assertion that a psychiatrist would have testified that Ms. Tindall's mental condition and prescriptions caused confusion and hallucination is purely speculative and devoid of any factual support.  Absent any evidence that a psychiatrist would have testified as Petitioner suggests, this court cannot consider Petitioner's speculative assertions on a critical issue, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  Therefore, Petitioner failed to meet his burden of establishing a reasonable probability that he would have been acquitted of any charge if counsel had presented a psychiatrist's testimony at trial. Accordingly, the state court decision denying Petitioner's claim was not an unreasonable application of Strickland.

     B.     Ground two: Ineffective Assistance of Trial Counsel for Coercing Alexander Larkins Not to Testify.

     Petitioner claims that his trial counsel coerced him to forgo testifying on his own behalf (Doc. 9 at 4).  He states that if he had testified, he would have explained that he did not cause the injuries suffered by the victim (*id.*).  Respondent concedes that Petitioner exhausted this claim by presenting it to the state courts in his Rule 3.850 motion (Doc. 32 at 7, 12)

     1.     Clearly Established Supreme Court Law

     The clearly established Supreme Court law governing claims of ineffective assistance of counsel was set forth *supra*.

     2.     Federal Review of State Court Decision

     As previously noted, the state court identified Strickland as setting forth the controlling legal standard for analyzing ineffective assistance of counsel claims (Doc. 32, Ex. LL at 18).  The state court found as fact that the when defense counsel announced that Petitioner would not be testifying at trial, the trial court questioned Petitioner on the record about his decision not to testify (*id.*).  The state court concluded that the transcript showed that Petitioner knowingly and voluntarily elected not to testify (*id.*).

     Petitioner has failed to demonstrate that the state court decision was unreasonable.  The record includes the following exchange between defense counsel, the trial judge, and Petitioner concerning the issue of Petitioner's testifying on his own behalf:

THE COURT:  Now, have you consulted with your client yet whether or not he is or is not going to testify?

MR. WAY:  I have spoken with him concerning the matter, yes, Your Honor.

THE COURT:  Have you made a final decision yet, or do you wish to wait until after lunch?

MR. WAY:  Your, Honor, Mr. Larkins is not going to testify in this matter.

THE COURT:  Let me go ahead and conduct a <u>Nelson</u> hearing now. . . . Mr. Larkins, do you understand you have an absolute right to either stay quiet and remain silent or to get up on the stand and testify in your own behalf?

THE DEFENDANT:  Yes, sir

THE COURT:  All right.  Have you discussed whether you should or should not do that with your counsel?

THE DEFENDANT:  I discussed it.

THE COURT:  I don't want to know what you-all said, but you had a full discussion on the pros and cons of whether you should or should not take that stand?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that the final decision as to whether you do or do not testify is yours, not your attorney's?

THE DEFENDANT:  Yes, sir.

THE COURT:  And I have been advised by your attorney that you wish not to testify on your own behalf in this matter; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  And that is your decision?

THE DEFENDANT:  Yes, sir.

THE COURT:  And you confirmed that to the Court?

THE DEFENDANT:  Yes, sir.

THE COURT:  Very good, sir.  If you don't take the stand, the Court is on record assuming that you have made that decision on your own behalf not to testify in your own behalf.

THE DEFENDANT:  Yes, sir.

(Doc. 32, Ex. BB at 109–10).

A claim of ineffective assistance of counsel is the proper framework to analyze Petitioner's allegation that his attorney violated his right to testify.  *See* United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992).  A criminal defendant has a "fundamental constitutional right to testify in his or her own behalf at trial.  This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel."  *Id.* at 1532.  Further:

> Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.  This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an "intentional relinquishment or abandonment of a known right or privilege."  Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938).  Moreover, if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.  The defendant can then make the choice of whether to take the stand with the advice of competent counsel.

*Id.* at 1533 (footnotes omitted).  Where counsel has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone, defense counsel "has not acted 'within the range of competence demanded of attorney's in criminal cases,' and the defendant clearly has not received reasonably effective assistance of counsel."  *Id.* at 1534 (citing Strickland, 466 U.S. at 687).   Although an attorney's failure in this regard is grounds for a claim of ineffective assistance of counsel, Petitioner must also satisfy the second prong of the Strickland analysis by showing that he was prejudiced as a result.  Nichols v. Butler, 953 F.2d 1550, 1553 (11th Cir. 1992).

In his federal habeas petition, Petitioner relies exclusively on his conclusory assertion that counsel coerced him not to testify to show that counsel's performance was substandard.  Indeed, he has alleged no facts to demonstrate threatened physical abuse or mental coercion, let alone of an intensity that would overpower his own will.  *See* Brady v. United States, 397 U.S. 742, 750, 90 S.

Ct. 1463, 1470, 25 L. Ed. 2d 747 (1970); United States v. Lagrone, 727 F.2d 1037 (11th Cir. 1984). Furthermore, Petitioner's assertion of coercion by defense counsel is undermined by Petitioner's own statements to the trial judge that he understood that the final decision as to whether or not to testify was his, not his attorney's, and that he (Petitioner) had decided not to testify. Accordingly, the undersigned concludes that Petitioner failed to sufficiently allege that counsel performed unreasonably under the performance prong of Strickland.

Additionally, Petitioner's general assertion of his planned testimony, that is, that he would have testified that he was not the source of the injuries suffered by the victim, without any specifics, is insufficient to demonstrate that there is any reasonable probability that he would have changed the outcome of the trial by taking the stand. Furthermore, defense counsel was able to raise doubt as to who inflicted the victim's injuries by arguing during closing statements that the State did not present testimony from people who the victim testified were present when Petitioner beat her, even though some of those people were identified and lived in the area, and the reason for this lack of testimony was that Petitioner did not inflict the injuries (Doc. 32, Ex. DD at 21–22, 27, 28). Moreover, Petitioner might have hindered the defense of his case by taking the stand. It is undisputed that Petitioner was sentenced as a prison releasee reoffender, and it is highly likely that the prosecutor would have elicited an admission from Petitioner that he had previously been convicted of several felonies. Additionally, Petitioner would have had to acknowledge that he provided the victim with crack cocaine (defense counsel acknowledged this during his closing statement), and he would have been asked to explain his statements in his letters to the victim such as his apologies to her, his statement that "not continuing my Christian walk has almost cost mine & your life," and his statement that "I've made an oath to never hurt you in any way from henceforth" (Doc. 32, Ex. CC at 74–76, Ex. FF). In the absence of any evidence that Petitioner would have testified to exculpatory facts or facts that would have impugned the victim's credibility more than defense counsel was able to do on cross-examination, and in light of the risk that Petitioner's testimony would have hurt his defense more than helped it, this court concludes that the state court did not unreasonably apply Strickland in denying Petitioner's claim. Therefore, Petitioner is not entitled to habeas relief on this claim.

   C.   Ground three:  Ineffective Assistance of Trial Counsel for Failing to Object to the Victim's Prior Inconsistent Statements as Substantive Evidence.

Petitioner claims that his trial counsel provided ineffective assistance because he failed to object to the victim's inconsistent statements about her crack cocaine use (Doc. 9 at 5).  Petitioner states the victim testified on direct examination that she had been smoking crack cocaine, but following a recess, she testified that she was not smoking crack cocaine (*id.*).  Petitioner states that if counsel had objected to the inconsistent statements, he could have impeached the victim with the statements on cross-examination (*id.*).

Respondent concedes that Petitioner exhausted this claim by presenting it to the state courts in his Rule 3.850 motion (Doc. 32 at 7, 12)

1.     Clearly Established Supreme Court Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel was set forth *supra*.

2.     Federal Review of State Court Decision

As previously noted, the state court identified <u>Strickland</u> as setting forth the controlling legal standard for analyzing ineffective assistance of counsel claims (Doc. 32, Ex. LL at 18).  The state court noted that the proper manner for defense counsel to handle inconsistent statements of a prosecution witness was not to object to them but to bring them to the jury's attention through cross-examination in an attempt to impeach the witness's credibility (*id.* at 18–19).  The state court found as fact that the victim did not make the inconsistent statements alleged by Petitioner (*id.* at 19).  The court found that the victim testified that on August 6, 2001, she had been smoking crack cocaine; shortly after this statement the proceedings recessed; and following the recess, the victim answered a few more questions regarding the events on August 6 and then stated that she did not recall smoking crack cocaine on August 14, 2001 (*id.*).  The court therefore concluded that Petitioner failed to show that his counsel was ineffective (*id.*).

Review of the trial transcript confirms the state court's finding that the victim did not testify inconsistently regarding her crack cocaine use.  The victim admitted she had been smoking crack cocaine on August 6, 2001, when Petitioner beat her in a bedroom of the house on Dunn Street (Doc. 32, Ex. CC at 41).  Following a recess in the proceedings, Ms. Tindall then testified regarding a separate beating on August 14, 2001, and stated she did not recall that she had been smoking crack cocaine prior to or during that beating (*id.* at 49).  Petitioner has failed to show that the victim's

testimony regarding smoking crack cocaine was inconsistent.  Furthermore, "state courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law.  Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Therefore, this court must defer to the state court's determination that the proper manner for defense counsel to handle any inconsistent statements by Ms. Tindall was not to object to them but to bring them to the jury's attention through cross-examination.  Moreover, defense counsel attempted to impeach Ms. Tindall's credibility by cross-examining her regarding her drug use during the period August 6–14, 2001.  Therefore, Petitioner failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was unreasonable.

> D.      Ground four:  Alexander Larkins was Denied the Right to a Fair Trial Because the Trial Court Erred in Failing to Sustain the Defendant's Objection to the Prosecutor's Improper Statement During Closing Argument.

Petitioner asserts the prosecutor made the following comment during her closing statement, "In his opening statement Mr. Way told you that this beating occurred after she left.  Where is the evidence that anyone other than the defendant beat her?  You have absolutely no evidence . . ." (Doc. 9 at 5).  Petitioner states defense counsel objected to the statement, but the trial judge overruled the objection (id.).  Petitioner contends the trial court's ruling denied him a fair trial (id.).  He states he raised this claim on direct appeal of his conviction (id.).

Respondent contends Petitioner did not fairly present the federal nature of his claim to the state courts (Doc. 32 at 8–10).  Furthermore, Petitioner cannot return to state court to exhaust the claim; therefore, the claim is procedurally barred from federal review (id. at 9).  Moreover, Petitioner has failed to show cause and prejudice to overcome the procedural bar (id.).

Review of the state court record shows that on direct appeal of his conviction, Petitioner raised a claim that the trial court erred in failing to sustain the defense's objection to the prosecutor's statement identified supra, on the ground that it was an improper comment on the defense's failure to produce evidence and improperly shifted the burden of proof (Doc. 32, Ex. GG at 6–9).  Petitioner argued that the State could not demonstrate that the error was harmless, that is, that there was no reasonable possibility that the error contributed to the verdicts (id.).  Petitioner made a single

reference to "due process rights" in his brief, however, he did not mention the United States Constitution or federal cases, and he did not even label his claim "federal."

Based on the authority of <u>Baldwin</u> and <u>McNair</u>, Petitioner's single reference to "due process rights" in his brief is insufficient to fairly present the federal nature of Petitioner's claim to the state court.  The fundamental purpose of the exhaustion requirement is to give the state the first opportunity to consider those federal constitutional issues that may arise from its criminal trials. <u>Picard</u>, 404 U.S. at 275–78.  To exhaust his claim and gain federal habeas review, the habeas petitioner must specifically raise the claim as a federal constitutional issue in state court.  <u>Duncan</u>, 513 U.S. at 365.  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." <u>Anderson</u>, 459 U.S. 4, 5–6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982); *see also* <u>Snowden v. Singletary</u>, 135 F.3d 732, 736 (11th Cir. 1998).  Although the petitioner need not "cite book and verse on the federal constitution," <u>Picard</u>, 404 U.S. at 278 (quotation omitted), he must directly refer to federal law, to the decisions of federal courts, or at a minimum, to the decisions of state courts that address the federal issue at hand.  *See* <u>Lyons v. Crawford</u>, 232 F.3d 666, 668 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (2001); <u>Baker v. Corcoran</u>, 220 F.3d 276, 289 (4th Cir. 2000); <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir. 1999); <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1161–62 (8th Cir. 1999); <u>Snowden</u>, 135 F.3d at 736 n.2.

The court notes, however, that the standard applied in the state court decisions cited by Petitioner is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution.  The state law standard for reviewing prosecutorial comments is the following:

> Wide latitude is permitted in arguing to a jury.  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.  The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown.  A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done."  Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

<u>Breedlove v. State</u>, 413 So. 2d 1, 8 (Fla. 1982) (quoting <u>Darden v. State</u>, 329 So. 2d 287, 289 (Fla. 1976) (other citations omitted).  Improper prosecutorial comment is subject to a harmless error

analysis, and will give rise to reversal of a conviction only if the comment is so prejudicial that it vitiates the entire trial.  <u>King v. State</u>, 623 So. 2d 486 (Fla. 1993); <u>Watts v. State</u>, 593 So. 2d 198 (Fla. 1992).  "The question is whether there is a reasonable possibility that the error affected the verdict.  The burden to show the error was harmless must remain on the state."  <u>State v. DiGuilio</u>, 491 So. 2d 1129, 1138–1139 (Fla. 1986).

This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution.  *See* <u>Williams v. McDonough</u>, No. 4:04cv496/RH/WCS, 2006 WL 1687836 (June 15, 2006).  A prosecutor's improper statements to the jury do not alone justify habeas relief but must be evaluated in light of the entire trial record.  <u>United States v. Young</u>, 470 U.S. 1, 11–12, 105 S. Ct. 1038, 1044, 84 L. Ed. 2d 1 (1985).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  The comments therefore must have impacted the jury's ability to fairly judge the evidence at trial.  <u>Young</u>, 470 U.S. at 12.  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper, and (2) the comments must have rendered the trial fundamentally unfair.  *See* <u>United States v. Eyster</u>, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); <u>Brooks v. Kemp</u>, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987).  If a reviewing court is confident that, absent the improper remarks, there is no reasonable probability that the outcome of the trial would have been different, the trial cannot be said to have been fundamentally unfair.  *See* <u>Brooks</u>, 762 F.2d at 1402; <u>Tucker v. Kemp</u>, 802 F.2d 1293, 1296 (11th Cir. 1986).

In applying this standard, a reviewing court should not assess prosecutorial comments in isolation, "shorn of their context"; rather, the court must examine the entire context of the trial proceeding.  <u>Cargill v. Turpin</u>, 120 F.3d 1366, 1379 (11th Cir. 1997) (citing <u>Brooks</u>, 762 F.2d at 1413).  "In this regard, isolated or ambiguous or unintentional remarks must be viewed with lenity."  *Id.* (internal quotation and citation omitted).  Furthermore, the court should evaluate whether "defense counsel's closing argument . . . ameliorate[d] the damage done to the defense by the

prosecutor's [statements]." *Id.* (citations omitted).  Moreover, the court must consider the trial court's instructions to the jury, as they "may remedy effects of improper comments." *Id.* (internal quotation and citation omitted).  Finally, the court must consider the evidence of guilt, as "[a] court need not determine whether specific arguments are proper or improper if, taken as a whole, they would not require relief." *Id.* (internal quotation and citation omitted).  Clearly, where the evidence against the accused is very strong, in order to merit relief, prosecutorial misconduct would have to be even more egregious and pervasive than in cases where the evidence is less compelling, for example, where the defendant has a viable defense.

Neither the Supreme Court nor the Eleventh Circuit has addressed the question of whether a federal claim has been "fairly presented" where state and federal claims share the same legal standard, thus the state court necessarily rejects the federal claim in ruling on the state claim. Therefore, it is not entirely clear that Petitioner in the instant case procedurally defaulted his federal due process claim.  Accordingly, the undersigned accepts Petitioner's contention that he exhausted his claim in the state court by presenting it on direct appeal (*see* Doc. 9 at 5).

   1. Clearly Established Supreme Court Law

The Supreme Court's standard for analyzing a due process challenge to a prosecutor's comment during closing argument is set forth above.

   2. Federal Review of State Court Decision

The state appellate court denied Petitioner's claim without written opinion.  Although the state court's denial without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable.  *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

The trial transcript shows that prior to the allegedly improper comment by the prosecutor, the prosecutor stated several times in her closing statement that the jury could consider only the evidence presented during trial in determining their verdict (Doc. 32, Ex. DD at 8–14). Additionally, the prosecutor stated several times prior to the challenged comment that the State had the burden of proof beyond a reasonable doubt as to each element of each crime.  The prosecutor

then went through each element of the kidnapping count and as to the third element, the prosecutor stated:

> [MS. RAY (the prosecutor)]:  And that he acted with the intent to inflict bodily harm upon or to terrorize her.  If you need evidence to that, ladies and gentlemen, just look at the photographs.  Look what he did to her.  The State has proven each one of those elements beyond a reasonable doubt.
>
> In his opening statement, Mr. Way told you that this beating occurred after she left.  *Where is the evidence that anyone other than this defendant beat her?  You have absolutely no evidence—*
>
> MR. WAY: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> MS. RAY: You can only consider the testimony that you have heard here today.  And Ms. Tindall testified that this man, this defendant, is the person who beat her on August 6th and on August 14th of the year 2001.
>
> The State has proven that element—all the elements of kidnapping to inflict bodily harm or to terrorize beyond a reasonable doubt.

(*id.* at 13–14) (emphasis added).  After this allegedly improper comment, the prosecutor went through each element of the remaining counts and reiterated several times that the jury could consider only the evidence that was admitted at trial, and that the State must prove each element beyond a reasonable doubt (*id.* at 14–20).  During defense counsel's closing statement, he stated that Petitioner did not have to prove anything to the jury, and he argued that the State had not presented sufficient evidence to meet its burden of proof (*id.* at 20–29).

Following closing arguments, the trial court instructed the jury.  The court went through each element of each offense, as well as each element of each lesser included offense, and as to each offense, the court instructed that to find Petitioner guilty, the State must prove each element beyond a reasonable doubt (*id.* at 29–34).  The court then instructed the jury as follows:

> The defendant has entered a plea of not guilty.  This means that you must presume or believe the defendant is innocent.  The presumption stays with the defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by evidence to the exclusion of and beyond a reasonable doubt.

To overcome the defendant's presumption of innocence the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime.

The defendant is not required to present evidence or prove anything. Whenever the words reasonable doubt are used, you must consider the following:

 A reasonable doubt is not a mere possible doubt, a speculative, imaginary, or forced doubt.  Such a doubt must not influence you to return a verdict of not guilty if you have an abiding conviction of guilt.

On the other hand, if after carefully considering, comparing, and weighing all the evidence there is not an abiding conviction of guilt or if having a conviction it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt, and you must find the defendant not guilty because the doubt is reasonable.

It is to the evidence introduced in this trial and to it alone that you are to look for that proof.  A reasonable doubt as to the guilt of the defendant may arise from the evidence, conflict in the evidence, or lack of evidence.

If you have a reasonable doubt, you should find the defendant not guilty.  If you have no reasonable doubt, you should find the defendant guilty.

It is up to you to decide what evidence is reliable.  You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.  You may find some of the evidence not reliable or less reliable than other evidence.

You may rely upon your own conclusion about the witness.  A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness. . . . .

The Constitution requires the State to prove its accusation against the defendant.  It is not necessary for the defendant to disprove anything, nor is the defendant required to prove his innocence.  It is up to the State to prove the defendant's guilt by evidence.

The defendant exercised a fundamental right by choosing not to be a witness in this case.  You must not view its as an admission of guilt or be influenced in any way by his decision.  No juror should ever be concerned that the defendant did or did not take the witness stand to give testimony in a case.

These are some general rules that apply to your discussion.  You must follow these rules in order to return a lawful verdict.  You must follow the law as it is set out in these instructions.

. . . .

This case must be decided only upon the evidence that you have heard from the answers of the witnesses and have seen in the form of the exhibits in evidence and these instructions.

. . . .

If you find that no offense has been proven beyond a reasonable doubt, then, or course, your verdict must be not guilty.

. . . .

In closing, let me remind you that it is important that you follow the law spelled out in these instructions in deciding your verdict.  There are no other laws that apply to this case.

(*id.* at 29–41).

The challenged comment by the prosecutor was not a comment on Petitioner's failure to present evidence, and it did not suggest that Petitioner was required to present evidence or that he had the burden of proof.  Instead, the comment was a general statement about the requirement that the jury's decision be based only on the evidence, that there was evidence that Petitioner beat the victim, and that there was no evidence that anyone besides Petitioner beat the victim.  Furthermore, defense counsel's closing argument that Petitioner did not have to prove anything to the jury, and the State had not presented sufficient evidence to meet its burden of proof dispelled any suggestion that Petitioner was required to present any evidence or bear any burden of proof.  Moreover, the trial court remedied any effect of the alleged improper comment by clearly instructing the jury on the following points:  (1) to convict Petitioner, the State was required to prove the elements of each crime beyond a reasonable doubt, (2) Petitioner was not required to present evidence or prove anything, (3) if the jury had a reasonable doubt as to whether Petitioner committed the offenses, they should find him not guilty, (4) a reasonable doubt as to guilt could arise from the evidence, conflict in the evidence, or lack of evidence, and (5) it was the jury's duty to decide what evidence was reliable.

Finally, the evidence for conviction of kidnapping to inflict bodily harm or to terrorize, aggravated battery with infliction of great bodily harm, and aggravated assault with a deadly weapon was very strong, and Petitioner's defense, that is, that he was not the person who committed the offenses, was not viable.  The victim testified that she had known Petitioner for a few months prior

to the beatings, and the victim's testimony, as well as the correspondence between Petitioner and the victim, showed that they had an intimate relationship and that Petitioner was very jealous and suspicious of her interactions with other men (*see* Doc. 32, Ex. CC at 36–37, 39–42).  The victim unequivocally identified Petitioner as the person who beat her on August 6 and 14 (*id.* at 42, 60–61). She further testified that she was not under the influence of crack cocaine during the August 14 incident, and although she was under the influence of crack during the August 6 incident, the drug in no way affected her ability to perceive or remember the fact that Petitioner beat her (*id.* at 41, 50, 61).  The victim's description of her injuries and the photographs of those injuries were compelling evidence of the severity of the beating on August 14.  In light of the victim's familiarity with Petitioner, her detailed description of the events, her candor regarding her own mental health and substance abuse problems, the internal consistency of her testimony, the correspondence between Petitioner and the victim, and the lack of any evidence of a reason or motive for the victim to wrongly identify Petitioner as the perpetrator, Petitioner's defense theory that he was not the person who committed the offenses was simply not viable.  Thus, Petitioner failed to show that the prosecutor's comments were improper, or that the comments rendered the trial fundamentally unfair. Accordingly, he is not entitled to federal habeas relief.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 9) be **DENIED**.

At Pensacola, Florida, this 11th day of September 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**